# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JAMES E. BONNETT,<br><br>   Plaintiff,<br><br>v.<br><br>WARDEN, WESTERN CORR. INST.,<br>CORY WALKER,<br>SEC. CHIEF BRADLEY O. BUTLER,<br>LT. H.U. 5,<br>8 – 4 SHIFT OFFICERS,<br><br>   Defendants. | Civil Action No.: PWG-19-3255 |

## MEMORANDUM OPINION

Pending before the Court are Plaintiff James Bonnett's Motions for Leave to File an Amended Complaint (ECF No. 11), for Leave to Proceed in Forma Pauperis (ECF No. 12) and for Emergency Injunctive Relief (ECF No. 13). Having reviewed the Responses to the Orders to Show Cause (ECF No. 6 & 15), Bonnett's replies thereto (ECF No. 10 & 16), and for the reasons cited herein, Bonnett's requests for injunctive relief shall be denied. Additionally, the complaint as supplemented (ECF No. 9) and amended (ECF No. 11) construed liberally and screened pursuant to 28 U.S.C. § 1915A shall be dismissed without requiring service on the named Defendants or a further response. Bonnett's Motion for Leave to file an Amended Complaint shall be denied as moot and his Motion for Leave to Proceed in Forma Pauperis shall be granted.

### Background

In his complaint, Bonnett seeks to have Western Correctional Institution ("WCI") placed in federal receivership due to gang violence, stabbings, fights, stabbing deaths, acts of extortion, and "cell rapes." ECF No. 1 at 3. He alleges the Warden is aware of these issues, but has failed

to do anything to stop the violence. *Id.* He claims "white racist correctional officers and high rank[ing] officials . . . are using wide spread gang violence for higher pay under fictitious claims." *Id*. at 4. Bonnett also claims that use of the administrative remedy procedure ("ARP") at WCI requires inmates to risk their lives as it subjects them to gang violence. *Id.* at 5. He claims the Black Guerilla Family ("BGF") is controlled by WCI. *Id*. He states that officials at WCI "refuse our right to proceed" and "outright violate [his] civil rights." *Id*. at 6.

Bonnett states that on October 29, 2019, he was released from administrative segregation where he had been for more than 10 months. *Id.* at 7. He claims he informed Case Management Supervisor Corey Walker, who he accuses of being a known BGF cohort, that he was not certain whether he had known enemies in general population at WCI due to the transfer of BGF members to WCI from North Branch Correctional Institution ("NBCI"). *Id*. Despite Bonnett's statements, he was removed from administrative segregation and assigned to Housing Unit (HU) 5, "a BGF Stronghold." *Id*. at 7-8. Bonnett claims he observed a White inmate walk past him with a bleeding wound to the side of his head as he walked onto HU 5 and heard the inmate say he had been attacked by BGF members for his commissary bag. *Id*. at 8. Bonnett claims the escort officer remarked that the inmate had to pay his bills. This attack led to a lockdown of HU 5, D tier. *Id*. at 9. Bonnett was assigned to HU 5, D-37. *Id*.

The following day, Bonnett states the tier was released from lockdown and he was confronted by a BGF member from NBCI regarding a stabbing Bonnett was charged with committing at NBCI while confined there. *Id.* at 9. The inmate, who Bonnett does not name, told Bonnett there was "no beef" but said Bonnett had to move to another unit. *Id*. According to Bonnett the other inmate told him the lieutenant who works on the 8 to 4 shift assists the BGF and would move Bonnett if BGF members asked him to. *Id*. When Bonnett reported his conversation

to the tier officer, his statements were disregarded. *Id*. In response to the encounter, Bonnett obtained a knife and when he told an unnamed lieutenant he had a knife, he claims this lieutenant told him to "go ahead and stab" another inmate. *Id.* at 10.

On October 31, 2019, Bonnett states he saw the same BGF member with whom he had spoken earlier, stab another inmate. *Id.* at 10. Bonnett claims the assailant was joined by two other inmates and that the officers inside the control unit witnessed the assault but did nothing in response. He claims the victim of the assault walked out of the tier bleeding profusely. *Id*. at 10-11. Later, when blood was discovered on the wall and floor, a search was conducted. Bonnett admits he hid his knife and managed to keep it from being discovered. He claims other inmates also managed to hide weapons. *Id*. at 11.

Bonnett filed an ARP complaint on November 2, 2019, stating that he had witnessed BGF members stab inmates on several occasions and that he would protect himself with a knife. *Id.* at 11. Bonnett's cell was searched in response to the admission made in his ARP. *Id*. He claims that the sergeant who led the search team "became loud, trying to inform BGF inmates that [Bonnett] had written a[n] ARP." *Id*. at 12. When asked to "sign off" of his ARP complaint, Bonnett refused because he felt his life was in danger and he could be killed. *Id*. Due to this refusal, Bonnett claims the sergeant "removed all my medication" for high blood pressure, throwing it on the floor and allowing another inmate to throw it in the trash. *Id*. Bonnett states he is 70 years old and claims his protest that he needed to reorder the medication was met with the retort, "stop writing ARPs." *Id*.

## Requests for Injunctive Relief

This Court directed counsel for the Division of Correction to show cause why injunctive relief should not be granted in favor of Bonnett based on the allegations raised in his complaint

3

(ECF No. 3) and later directed a response to correspondence filed by Bonnett concerning the death of another inmate at WCI (ECF No. 14). The first response filed, which includes a declaration from Corey Walker, indicates that Bonnett has been housed at WCI since August 8, 2017. ECF No. 6-1 at 12-13. Prior to that time, he was temporarily housed at Maryland Correctional Training Center from September 30, 2019 to October 3, 2019; and was last housed at NBCI in 2011. *Id*. at 15. Bonnett's enemies list does not include inmates who are currently confined at WCI. *Id*. at 14.

When Bonnett's ARP complaint was investigated, Bonnett refused to talk to the investigating officer. *Id*. at 8. The investigation noted that Bonnett's October 24, 2019 removal from administrative segregation was actually occasioned by his request for removal, confirming he believed no danger from any other inmate existed at WCI. *Id*. at 11. Further, the stabbing incident as well as the other incidents cited by Bonnett, had been handled by staff, and a search of his cell on November 2, 2019 did not uncover a weapon. *Id*. at 8-10.

On November 7, 2019, Bonnett was interviewed by a lieutenant from another housing unit during which Bonnett retracted his October 24, 2019 release and said he did not feel safe in general population. ECF No. 6-1 at 2, ¶6. On November 24, 2019, Bonnett was placed on administrative segregation pending an investigation into his claims. *Id*. at ¶7.

In reply, Bonnett makes generalized accusations that his life is in danger because WCI officers are using BGF gang members to enforce control through violence and extortion and refuse to take steps such as removing metal lockers to interrupt the proliferation of weapons in the prison. ECF No. 8 at 1-2. He also states that gang members should not be housed with unaffiliated prisoners and claims he is being held in punitive segregation. *Id*. at 3-4.

In a second reply, Bonnett asserts that the claim that he did not provide evidence to substantiate the matters raised in his ARP complaint "is a bold face lie" and directs the Court's

attention to a statement he wrote on November 7, 2019. ECF No. 10 at 5. That statement is not included in the 50 pages of documents filed by Bonnett and he claims it was removed and destroyed by "Lt. Agent of H.U. 2, who last maintain[ed] control of [the] written statement." *Id*. Bonnett includes additional generalized assertions regarding an alleged conspiracy between correctional officers and BGF gang members, referring to an "open partnership," and calls himself "a notorious weapon maker" because of "repeated attacks by the BGF." *Id*. at 5-6. He states he never would have signed a waiver to go into general population had he known his enemies would be released to general population on the same day. *Id*. at 6. Bonnett concedes that the stabbings he has witnessed were not attacks intended for him, but maintains the violence in the housing unit was avoidable had officials properly investigated his assertions that BGF members were being assisted by correctional staff. *Id*. at 6-7.

In Bonnett's second emergency motion he states that another inmate, Darryl Green, was killed by unnamed members of the BGF who used Green's cell partner to supply him with a particularly lethal street drug known as "blackmarked." ECF No. 13 at 2. Bonnett takes issue with the fact that Green's cell partner was allowed to remain in the cell because it was a crime scene and states that he and Green were the subject of similar threats from the BGF. *Id*. at 1-2. He further states that Green's "death should be investigated by Federal and State officials due to the delay in the death notice of the inmate's family." *Id*. at 3.

In response to this Court's Order to Show Cause (ECF No. 14), Defendants reiterate that Bonnett is in a segregation cell where he was assigned as of November 24, 2019 and has no known or declared enemies confined at WCI. ECF No. 15-1 at 3 (Notice of Assignment to Administrative Segregation); 6-7 (Enemy Alert and Retractions). They further state that Bonnett's current cellmate, Jamielle S. Chase, is neither a member of a gang, nor a named enemy of Bonnett. ECF

No. 15-1 at 2, ¶6 (Declaration of Corey Walker). Darryl Green, who did in fact die, was a validated member of BGF and was not located on the same tier as Bonnett. *Id.* at ¶8, *see also Green v. Warden, et al.*, Civ. Action ELH-19-1157 (D. Md. 2019) at ECF No. 42 (Suggestion of Death).

In reply, Bonnett again states that the "Defendants maintain a racist and hate monger correctional system" that requires "federal intervention and strong federal receivership." ECF No. 16 at 1. Bonnett states that this Court "must remove the 'hands off' doctrine, giving K.K.K. behavior unstoppable behavior pattern hidden and supported by the Division of Correction." *Id.* at 1-2. He suggests that the number of killings and brutal attacks on segregation inmates at WCI be counted and asserts that WCI officials have a "sample of the killer drugs . . . and failed to turn over evidence." *Id.* at 3. Bonnett asserts that the "death rate is high, because WCI officials place inmates into position to be killed within WCI population and WCI segregation unit HU 4." *Id.* at 4.

A preliminary injunction is an extraordinary and drastic remedy. *See Munaf v. Geren,* 553 U.S. 674, 689–90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish the following elements: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Group,* 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant preliminary injunctive relief involving the management of correctional

institutions only under exceptional and compelling circumstances. *See Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994).

Bonnett fails to delineate a specific, known risk of harm to him from which Defendants are denying him protection. As noted, he has been assigned to administrative segregation for his safety; to the extent he names enemies who are currently housed at WCI with him and present a threat to him, Defendants have given no indication that they will ignore Bonnett's concerns. His claims that an atmosphere of violence at WCI requires this Court's micro-management of the prison is simply without a basis in law. It is not the province of this Court to determine how a particular prison might be more beneficently operated; the expertise of prison officials must be given its due deference. *See Sandin v. Conner*, 515 U.S. 472, 482-83 (1995).

To the extent Bonnett alleges there are dangers to other inmates at WCI, he does not have standing to assert matters that pertain to other inmates and their safety. *See Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (party invoking the court's authority must show he has personally suffered an actual or threatened injury traceable to the alleged illegal conduct of defendants).

To the extent that Bonnett's request for injunctive relief sought a change in his housing assignment for purposes of ensuring his safety, the relief sought has been granted, and the request is now moot. Bonnett's broader requests that the prison be placed into "federal receivership" due to alleged corruption and other decisions made by prison officials regarding potential sources for weapons that foment further violence are unwarranted as there is no evidence before this Court to support such extreme measures. Further, Bonnett's allegations regarding staff involvement in gang activity do not appear to be based on anything other than rumor, conjecture, and opinion.

## Supplemental and Amended Complaints

In his supplemental complaint (ECF No. 9) Bonnett states that Lt. Curran McKenzie is an agent of the BGF who should be investigated by federal and state officials because he provided gang members with confidential intelligence information and told a BGF member that Bonnett reported the BGF member had weapons in his cell. He also alleges that a "correctional officer whom I can ID by Photo, called me a 'rat snitch' because I filed a ARP against the 'BGF.'" ECF No. 9 at 1.

In his Motion for Leave to File an Amended Complaint (ECF No. 11), Bonnett asserts that the Defendants are violating his right to properly petition the Court by failing to supply him with administrative remedy forms and by failing to process the claims he files. *Id*. at 1. The two-page motion is accompanied by 12 pages of attachments consisting of ARP complaints filed by Bonnett. ECF No. 11-1 & 11-2. Pursuant to Federal Rule of Civil Procedure 15(a), "[a] party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Although counsel was directed to provide responses to Bonnett's claims that his life is in danger, the complaint has not yet been served. The Motion to Amend the Complaint is therefore denied as moot.

This Court is obliged by 28 U.S.C. § 1915A to screen prisoner complaints and dismiss any complaint that is "frivolous, malicious or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). In deciding whether a complaint is frivolous, "[t]he district court need not look beyond the complaint's allegations . . . . It must, however, hold the pro se complaint to less stringent standards

than pleadings drafted by attorneys and must read the complaint liberally." *See White v. White,* 886 F.2d 721, 722-23 (4th Cir. 1989). Bonnett's complaint is subject to this screening and, affording his allegations the liberal construction required for self-represented pleadings, it is subject to dismissal.

In order to prevail on an Eighth Amendment claim of failure to protect from violence, Bonnett must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987). "Prison conditions may be 'restrictive and even harsh,' but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837, *see also Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997).

Here, there is no dispute that Bonnett asked to be removed from administrative segregation and confirmed he did not feel there was a threat to his safety at WCI. When Bonnett later recanted his request for removal, he was put back on administrative segregation pending an investigation into his claim that his life was threatened by other inmates. Despite his assertions otherwise, Bonnett's safety has not been disregarded, nor has there been a callous disregard for the existence of a potential for harm in the form of weapons held by the inmate population. Following an assault

on another inmate, a search of the entire housing tier was conducted. When Bonnett admitted he had a knife, a search was conducted of his cell. Whether the searches were successful or not is of little relevance so long as the officers involved took affirmative steps to eliminate the presence of weapons. The vague allegations raised by Bonnett concerning the existence of racism within the prison and that certain officers are operatives of the BGF have no demonstrable basis in fact; rather, those claims appear to be based on Bonnett's perception of Caucasian officers, not on actions Bonnett has observed or described. Further, Bonnett's requested relief – an investigation or placement of WCI into federal receivership – is unavailable. This Court is not an investigative agency, "federal courts do not sit to supervise state prisons." *Meachum v. Fano*, 427 U.S. 215, 229 (1976).

Accordingly, by separate Order which follows, Bonnett's request for injunctive relief shall be denied; his Motion to Amend denied as moot; his Motion to Proceed in Forma Pauperis granted; and the complaint shall be dismissed.

<u>March 17, 2020</u>  
Date

    <u>/S/                     </u>  
Paul W. Grimm  
United States District Judge